```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
GEORGE JOSEPH,

                Plaintiff,                    96 Civ. 2640 (MGC)

      -against-                               OPINION

DR. J. SUPPLE, M.D.,
DR. C. F. KURTZ, M.D.,
DR. WRIGHT, M.D.,

                Defendants.
-----------------------------------X
APPEARANCES:
                GEORGE JOSEPH, PRO SE
                # 91A1456
                Great Meadow Correctional Facility
                11739 State Route 22, PO Box 51
                Comstock, NY 12821-0051

                ELIOT SPITZER, ATTORNEY GENERAL
                OF THE STATE OF NEW YORK
                Attorneys for Defendants Dr. J. Supple, M.D.
                and Dr. C. F. Kurtz, M.D.
                120 Broadway
                New York, NY 10271-0332
                By:  Marc A. Konowitz, Esq.
```

**CEDARBAUM, J.**

George Joseph, proceeding pro se, brought this action while a state prisoner against three physicians employed by the New York State Department of Correctional Facilities. Plaintiff sues under 42 U.S.C. § 1983 for failure to provide speech therapy following his throat operation on May 16, 1995. By letter dated September 1, 1998, plaintiff requested that Dr. Wright be withdrawn as a defendant from the case. On February 25, 2000, Drs. Supple and Kurtz ("defendants") moved for summary judgment

1

dismissing the Amended Complaint pursuant to Fed. R. Civ. P. 56. Defendants served plaintiff with the motion accompanied by the notice required by the Second Circuit, including a statement that plaintiff's claims could be dismissed without a trial if he failed to respond. See Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996). Plaintiff has not responded, despite that notice and despite having been directed on three separate occasions to do so. For the reasons that follow, defendants' motion is granted.

BACKGROUND

I. Procedural History

In order to ready this case for trial, the parties were initially directed by letter dated May 26, 1999 to submit a written narrative statement of the facts to be proven and witnesses and documents to be presented at trial. Defendants thereafter indicated their intention to move for summary judgment, and on February 7, 2000 I directed them to serve their motion papers by no later than February 25, 2000. Plaintiff was in turn directed on March 28, 2000 and again on October 25, 2000 to respond to the motion, and was each time advised that failure to respond would result in the motion being treated as unopposed. Nevertheless, plaintiff did not respond by the required dates.

On March 21, 2002, both plaintiff and defendants were directed to show cause why the action should not be dismissed without prejudice in light of the Supreme Court's February 26,

2

2002 decision in Porter v. Nussle, 534 U.S. 516 (2002). Rather than respond, plaintiff made multiple requests to stay the action until his scheduled release from prison in November 2002. Plaintiff's request was granted, however plaintiff was not released from prison at that time. Plaintiff was therefore again directed by order dated April 21, 2003 to show cause why the case should not be dismissed as barred by the rule of Porter v. Nussle. Plaintiff's requests for further lengthy extensions of time to show cause were denied on May 13, 2003 and May 23, 2003.

Ultimately, plaintiff did show exhaustion of his administrative remedies in response to the April 21, 2003 order to show cause, and his application to stay the action until his release from prison was granted on June 11, 2003. Plaintiff was released from prison on May 21, 2004. A court conference was scheduled for November 18, 2004, rescheduled at defense counsel's request, and rescheduled again and finally cancelled because of plaintiff's arrest for violation of parole.

On January 10, 2005, I directed the parties to advise me whether they were ready for trial. Both sides indicated they were ready to proceed, but defendants renewed their request to dismiss the case on summary judgment. By letter dated February 2, 2005, and again by order dated February 16, 2005, plaintiff was directed to respond to defendants' motion for summary

3

judgment by no later than March 15, 2005.  Plaintiff was advised that if he failed to respond by that date, the facts submitted by defendants would be deemed admitted.  Plaintiff requested that he be appointed counsel to assist him in opposing the motion and sought a sixty-day extension of time.  Those requests were denied on March 2, 2005.  Plaintiff has submitted no response to defendants' motion.

II.  Admitted Facts

Pursuant to Local Civil Rule 56.1(c), the material facts as to which defendants contend there is no genuine issue for trial are deemed admitted for purposes of this motion.  Those facts, gleaned from plaintiff's medical records and the sworn affidavits of defendants, are as follows.

Plaintiff has a history of vocal hoarseness dating back to childhood.  He also has a history of smoking, which contributes to hoarseness.  On May 16, 1995, while an inmate at the Fishkill Correctional Facility ("Fishkill"), plaintiff underwent surgery to remove a growth from one of his vocal cords.  His medical records indicate that he tolerated the procedure well.

Dr. Supple first became involved in plaintiff's treatment on May 16, 1995 following plaintiff's surgery, when he continued a consult started by another provider who left the facility.  Dr. Supple never treated plaintiff personally.  He based his consultation on his review of plaintiff's medical records.  On

the day of plaintiff's surgery, Dr. Supple referred plaintiff to the ENT clinic at St. Agnes Hospital in White Plains, New York.

Plaintiff was seen at the ENT clinic on June 2, 1995. The clinic recommended speech therapy and a six-month follow-up examination as needed. On June 5, 1995, Dr. Supple entered a request in plaintiff's medical record for the recommended six-month follow-up examination, but did not schedule speech therapy at that time because he did not in his medical judgment believe it was necessary or that it would be helpful.

On September 22, 1995, plaintiff filed a grievance against Dr. Supple with the Inmate Grievance Review Committee ("IGRC"), asking why it was taking so long to receive the recommended voice therapy. On September 25, 1995, Dr. Supple responded to plaintiff's grievance by scheduling him for voice therapy. He did this not because he thought the therapy was necessary, but simply because plaintiff grieved the issue. On September 27, 1995, the IGRC concluded that the action plaintiff was requesting had been satisfied.

As a result of Dr. Supple's referral, plaintiff met on November 2, 1995 with Diane Phelan, a speech-language pathologist at St. Francis Hospital in Poughkeepsie, New York. Phelan wrote in her evaluation that, according to plaintiff, his hoarseness had been fairly consistent over time and his voice was the same then as it had been before the surgery. Dr. Supple interpreted

5

this as an indication that plaintiff's hoarseness was not getting worse over time.

Phelan also reported that plaintiff appeared able to attain adequate vocal loudness for conversation and had a vocal pitch that was within normal limits. She noted that plaintiff had his two lower central incisors pulled in August 1995, three months after his vocal cord surgery, and that he had mildly reduced vocal precision with regard to a few different sounds, but that his language skills were adequate for daily functional communication. Phelan further noted her impression that plaintiff "may have some potential to achieve improved vocal quality and functioning" and that "[h]e demonstrated limited potential for improved articulatory precision." Based on her evaluation, Phelan recommended that plaintiff receive voice therapy once or twice per week for a two-to-three week trial period. The next day, on November 3, 1995, Dr. Supple requested the voice therapy that Phelan recommended.

Plaintiff was transferred to Arthur Kill Correctional Facility in Staten Island, New York ("Arthur Kill") on November 29, 1995. He had not yet begun the therapy Dr. Supple had requested. On the day prior to plaintiff's transfer, the Nurse Administrator at Fishkill sent a message to the Nurse Administrator at Arthur Kill advising that plaintiff was being transferred, that plaintiff had been scheduled for voice therapy

6

but had not yet begun it, and that it was the decision of the doctor at Arthur Kill whether to pursue the therapy. After plaintiff's transfer to Arthur Kill, Dr. Supple had no more involvement in plaintiff's treatment.

According to the Amended Complaint, plaintiff was interviewed by a physician at Arthur Kill who scheduled him to be seen by an ENT specialist, but plaintiff was transferred to Collins Correctional Facility ("Collins") before he was actually seen.

Plaintiff was transferred to Collins on January 25, 1996. Dr. Kurtz had no contact with plaintiff prior to the transfer, and his treatment of plaintiff at Collins was based on his personal evaluations of plaintiff as well as his review of plaintiff's medical records. Dr. Kurtz examined plaintiff for the first time the day after plaintiff arrived at Collins, at which time he found no significant hoarseness. Dr. Kurtz examined plaintiff again on February 21, 1996 for his complaint of persistent hoarseness. At that time, plaintiff was moderately hoarse.

On February 22, 1996, Dr. Kurtz reviewed plaintiff's medical records, noting plaintiff's history of hoarseness "since childhood," the ENT clinic's recommendation for speech therapy and a six-month follow-up, and Phelan's report of November 2, 1995. After examining plaintiff and reviewing his records, Dr.

7

Kurtz's assessment was that plaintiff's longstanding hoarseness, which preceded his imprisonment, would not be helped by speech therapy. Plaintiff's hoarseness was intermittent, and on that basis, Dr. Kurtz saw no indication for voice therapy or further evaluation or treatment of plaintiff's condition. Dr. Kurtz personally observed that plaintiff's hoarseness was not serious, was not getting progressively worse, and did not significantly interfere with his ability to speak. He further observed that plaintiff was able to verbally communicate effectively.

Dr. Kurtz evaluated plaintiff again on May 30, 1996, and his opinion about whether voice therapy was indicated did not change. He did not prescribe any treatment for plaintiff's hoarseness because it was his opinion that nothing could be done to improve it. Dr. Kurtz has not seen or treated plaintiff since 1996.

Plaintiff's subsequent medical records suggest that plaintiff may have continued smoking after his throat surgery. Specifically, when plaintiff was reviewed on June 22, 1998 for purposes of double celling, he indicated a preference to be housed in a cell with a smoker. According to Dr. Supple, continued smoking could be a cause of plaintiff's persistent hoarseness. Medical records from 1997 and 1998 do not indicate that plaintiff's hoarseness has gotten worse since 1996, or that plaintiff has requested or received treatment for his condition since that time.

DISCUSSION

I.  Summary Judgment Standard

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The judge's role in summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In deciding whether a genuine issue exists, a court must "examine the evidence in the light most favorable to the party opposing the motion, and resolve ambiguities and draw reasonable inferences against the moving party." In re Chateaugay Corp., 10 F.3d 944, 957 (2d Cir. 1993). In addition, because plaintiff proceeds pro se, I must read his papers liberally and "interpret them to raise the strongest arguments that they suggest." Soto v. Walker, 44 F.3d 169, 173 (2d Cir. 1995) (citation and internal quotation marks omitted); see also Haines v. Kerner, 404 U.S. 519, 520 (1972) (pro se complaints held to less stringent standards than pleadings drafted by lawyers).

Nevertheless, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. The non-movant "may not rest upon the mere allegations or denials of [his] pleading," but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If the non-movant fails to so respond, then summary judgment, if appropriate, will be entered against him. Id.

## II. Deliberate Indifference to a Serious Medical Need

In his written narrative statement of facts, plaintiff states that "defendants were reckless and acted with deliberate indifference, which caused the plaintiff pain, suffering, and possibly degeneration and further voice problems."

The Eighth Amendment prohibits deliberate indifference to a prisoner's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). The test for deliberate indifference has both an objective and a subjective component. The objective showing required is that "the alleged deprivation [is] . . . 'sufficiently serious.'" Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The subjective showing required is that "the charged official [acted] with a sufficiently culpable state of mind."

10

Id. A prison official acts in a deliberately indifferent manner when that official "'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

Plaintiff's claim fails both prongs of the deliberate indifference test. First, plaintiff's condition was not "sufficiently serious." The standard for deliberate indifference "contemplates 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'" Hathaway, 37 F.3d at 66 (quoting Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting)); see also Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998). Plaintiff's Amended Complaint and his narrative statement of facts do not allege such an urgent condition. The uncontroverted evidence shows, among other things, that plaintiff has a history of vocal hoarseness since childhood, that plaintiff himself reported that his hoarseness had been fairly consistent over time, and that his voice was the same after surgery as it had been before. Plaintiff was observed by the speech-language pathologist to have adequate vocal loudness for conversation and a vocal pitch that was within normal limits. Dr. Kurtz personally observed that plaintiff's hoarseness was not serious, was not getting progressively worse, and did not significantly

interfere with his ability to speak. Moreover, medical records subsequent to defendants' treatment of plaintiff show no indication that plaintiff's hoarseness worsened, or that plaintiff requested or received treatment for his hoarseness after 1996.

Moreover, even assuming plaintiff's vocal condition was "sufficiently serious," the undisputed evidence establishes that defendants did not act with deliberate indifference to plaintiff's serious medical needs. Plaintiff's complaint is not that he was completely denied medical care; in fact, his condition was repeatedly evaluated by medical personnel, including defendants. The gravamen of plaintiff's complaint, rather, is that he should have received the voice therapy that his surgeon and the speech-language pathologist recommended. However, "[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." Chance, 143 F.3d at 703.

Although Dr. Supple did ultimately schedule plaintiff for therapy in response to plaintiff's formal grievance, neither he nor Dr. Kurtz actually believed in their medical judgment that the therapy would be helpful. As Dr. Supple explained in his affidavit in support of the motion:

> I did not schedule speech therapy [on June 5, 1995]
> because, in my medical judgment, I did not believe it
> was necessary.  In my prior experience with vocal cord
> nodule removal, many patients have improved following
> surgery without any speech therapy.  If surgical
> removal of the nodule does not improve hoarseness, I do
> not believe speech therapy would help either.
> Moreover, in my experience and professional opinion, a
> delay between vocal cord surgery and voice therapy
> would not cause any degeneration in the vocal condition
> of the patient.  Furthermore, with respect to
> plaintiff, this was not a degenerative condition at
> all.  As stated above, it was a lifelong condition,
> which has been intermittent and has not significantly
> changed over time.  Given the failure of the surgery to
> correct whatever hoarseness there may have been, it was
> my opinion that plaintiff's chances for improvement
> were not good, with or without voice therapy.

Even the speech-language pathologist acknowledged plaintiff's "limited potential for improved articulatory precision" and recommended therapy only on a "trial basis."  At most, plaintiff states a claim for medical malpractice arising from defendants' negligence.  See Amended Complaint ¶ 9a (requesting damages for "past and future pain and suffering, negligence, and permanent physical impairment").  A claim for negligent malpractice, however, "does not become a constitutional violation merely because the victim is a prisoner."  Estelle, 429 U.S. at 106; see also Hathaway v. Coughlin, 99 F.3d 550, 553, 554 (2d Cir. 1996).

III. Qualified Immunity

Defendants argue in the alternative that they are qualifiedly immune from suit. The defense of qualified immunity shields public officials from liability for damages arising from their performance of discretionary acts "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Ying Jing Gan v. City of New York, 996 F.2d 522, 531 (2d Cir. 1993). "Even where . . . a plaintiff's federal rights are well-established, qualified immunity is still available to an official if it was 'objectively reasonable for the public official to believe that his acts did not violate those rights.'" Hathaway, 37 F.3d at 67 (quoting Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991)); see also Robison v. Via, 821 F.2d 913, 921 (2d Cir. 1987).

As explained above, defendants' evidence in support of their motion shows that they exercised their medical judgment in treating plaintiff. It was objectively reasonable for them to believe that in doing so, their acts did not violate plaintiff's constitutional rights. Accordingly, defendants are entitled to summary judgment on the alternative ground that they are

qualifiedly immune from suit for damages in their individual capacities.[1]

CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted.

SO ORDERED.

Dated:   New York, New York
         October 11, 2005


                        S/ _____
                              MIRIAM GOLDMAN CEDARBAUM
                              United States District Judge

---

[1] Plaintiff's Amended Complaint also seeks "[a]n injunction ordering the Department of Correctional Services to schedule plaintiff to be seen promptly by an ENT specialist and a speech-voice therapist for the treatment which has not been provided thus far." The Department of Correctional Services, however, is not a party to this action. Even were plaintiff's request construed as seeking an injunction against defendants, however, the Amended Complaint must be dismissed on the independent ground that there is no genuine issue of material fact with respect to plaintiff's claim of deliberate indifference. See Discussion, Part II, infra.